Allen, J.
On the 10th day of May 1811, Henkle and Allstadt bound themselves as securities for Jesse Moore in a bond executed to Joshua Hall, that Moore should convey to Hall a tract of land described in the obligation, and at all times indemnify and save harmless the said Hall against the title, claim or claims of any person to the land. This bill was filed by the representatives of Allstadt, one of the securities, against Henkle, the other security, for contribution for an alleged loss in consequence of an incumbrance upon the land in favour of a third person, which Allstadt’s representatives have been compelled to discharge: Allstadt himself having at a subsequent period become the owner of the land sold by Moore to Hall. The question, therefore, which meets us at the threshold is, has there been any breach of the condition of the bond so as to give cause of action against the securities? The bond was executed on the 10th of May 1811; and on the 18th July 1811, Jesse Moore, by his deed duly executed and recorded, conveyed to Joshua Hall 87 acres' 1 rood 83 perches, the land in the bond referred to. This deed appears to have been duly accepted, and the possession of the land to have passed to and been held by Hall under it, until he sold and conveyed to Allstadt. So there has been no breach of the condition that Moore should convey the land. Is it made to appear by any thing in this record that any loss has been sustained by Hall or his assignee *289 in consequence of the assertion and establishment of any claim in favour of a third person against this land ? It appears that this tract of 87 acres was part of a larger tract claimed and held by Moore under a conveyance to him by Richard B. Lee and Ludwell Lee by deed dated the 26th April 1804. After the conveyance of the 87 acres to Joshua Hall, Moore, on the 7th of December 1811, sold and conveyed to Jacob Allstadt 114 acres of the larger tract held by him for the consideration as expressed in the deed of 3990 dollars. At the time of the conveyance by the Lees to Moore, the land sold to Moore, together with other lands held by the Lees, were encumbered by a mortgage given by a preceding owner to secure a debt due to Milligan. The mortgage was regularly foreclosed, the lands were decreed to be sold, they were sold and Colin Auld became the purchaser at the sale and received a deed from the commissioners. In consequence of some arrangement and understanding between the parties prior to the sale under the decree, Auld agreed to let the Lees and Moore have the lands held and claimed by them respectively, upon their agreeing to pay him certain sums for which they executed their respective obligations. Moore having failed to pay his obligations, and judgments and executions proving fruitless,. Colin Auld, in the year 1815, filed his bill against Moore and Allstadt to subject the land to his claim. At this time, so far as the record discloses, Hall was the owner of the 87 acres, and Allstadt of the 114 acres; both tracts being portions of the larger tract originally subject to the lien in favour of Colin Auld. Hall was not made a defendant in the suit. The bill of Colin Auld alleges that he had been informed that Moore sold his land to the defendant Jacob Allstadt, and calls on Allstadt to say whether and at what time he became the purchaser of the said land from Moore. In 1817, Allstadt answered, and merely says he purchased the land from Moore, he thinks, the 19th November 1811. His deed *290 for the 114 acres, all that it would seem he then owned, is dated the 7th December 1811. After this answer was filed Allstadt purchased from Joshua Hall the tract of 87 acres, who conveyed to him by deed dated the 17th November 1819. No notice was taken of this purchase in the suit. Allstadt set up no pretension that Hall or any other purchaser of parts of the land should be compelled to contribute to the discharge of the incumbrance. Nor was any such purchaser made a defendant. The cause proceeded against Allstadt as sole purchaser, and a decree was pronounced foreclosing the equity of redemption in the land sold but not conveyed by Auld to Moore, and sold by Moore to Allstadt, and directing a sale of the land sold by Moore to Allstadt unless the money was paid within a limited time. Allstadt's representatives paid the amount of the decree, and Colin Auld, on the 25th September 1825, in accordance with the decree, executed a deed of confirmation to the heirs of Allstadt for the 114 acres conveyed by Moore to Allstadt on the 7th December 1811. In these proceedings the 87 acres conveyed to Hall were not noticed, and Hall being no party to the suit, nor a pendente lite purchaser, could not be affected by them. What breach of the condition of the bond has' occurred which would give Hall cause of action against the securities ? They bound themselves that Moore should convey, and he has conveyed, and the land has been held ever since under this conveyance. They further bound themselves to indemnify and save harmless the said Hall against the title or claim of any other person, and no such title or claim has been asserted or established against this particular tract of 87 acres. If Hall had never aliened the land, and were now to bring his action on the bond, there is not a particle of evidence in this record to shew that there has been any breach of the condition. If he could not recover, can his assignee occupy any better position? We may suppose, for the sake of argument, *291 that if Hall had been made defendant to the suit of Colin Auld, he would, as the case is now presented, have been bound to contribute ratably with Allstadt to satisfy the incumbrance. But how can it be said that if he had been made defendant the case would have presented the same facts precisely as they now appear? It might have been in his power to shew that his land had been released from the incumbrance, and that the parties had agreed to look to the land still remaining in Moore's hands after the sale to him. A portion so remaining, and afterwards sold to Jacob Allstadt, furnished an ample security for the debt, as appears from the consideration, 3990 dollars, mentioned in the deed from Moore to Allstadt, and as was made manifest by the fact that Allstadt’s representatives have discharged the debt with the accumulation of interest and costs, rather than permit the land to be sold.
But it is unnecessary to speculate about matters not appearing in the record. It is sufficient for all the purposes of the security in the bond given to Hall, that it does not appear any claim or title has been asserted against Hall, or Allstadt his vendee, on account of the tract of 87 acres. Until this had been shewn it was premature to entertain a bill against the security, either on behalf of the obligee or his assignee, or on behalf of one security against the other for contribution.
The decree is erroneous, as it seems to me,. co-grounds. At best Allstadt could only call up3 security for contribution for the reason that he] had, after the suit brought by Colin Auld, be«bme~ the owner of both tracts; that although the decree but one of the tracts, the lien in fact bound botff^and that having paid the decree to release the 114 acres from' the lien, he should be substituted to the benefit of the lien so as to obtain a pro rata satisfaction from the other purchasers of portions of the encumbered subject; and that as he is the owner of the Hall land he should be *292 permitted to call upon his cosecurity in the bond to Hall for as much as that security could have been compelled to pay to Hall, if Hall himself had been forced to contribute. Even if a Court of Equity could rightfully aPP^ ^ Principles of substitution and contribution to charge a security whose liability was a mere legal responsibility upon the covenants of his deed, the facts in the cause and the settled principles of this Court shew that this position cannot be maintained. It appears that although the whole tract was encumbered and responsible in Moore’s hands for the debt, his alienation to Hall preceded his alienation to Jacob Allstadt. Notwithstanding the sale of a part of the laud to Hall, Moore retained enough to discharge the incumbrance. And it was not until after his deed to Hall, that he conveyed 114 acres to Jacob Allstadt by the deed of the 7th December 1811. At a still later period he conveyed 40 acres to Daniel Allstadt, by deed dated the 27th February 1823. This last deed however recites that the land was sold to Daniel, Allstadt about 1805 or 6. Though this recital might not be evidence against strangers to the deed, it was probably owing to a knowledge of the truth of the fact recited, that no serious effort was made to charge this tract of 40 acres. If Moore had continued to hold these tracts when Colin Auld (brought his suit, they would have been first subjected to the incumbrance; and although he had parted with them, the land in the,hands of the last alienee was first liable. Conrad v. Harrison, 3 Leigh 532; M’Clung v. Beirne, 10 Leigh 394. For the purposes of this suit Jacob Allstadt was '‘the last alienee, there being no appeal from so much of the decree as dismissed the bill as to the other purchasers. The Judge of the Court below appears, from an extract of his opinion copied into the argument, to have proceeded upon the idea that the sale to Hall was posterior to all the rest; and accordingly, considering it liable for the whole incum *293 brance, he rendered a decree against one of the securities for a moiety of the debt. He says whilst Auld’s suit was pending, and before he got any title, Moore sold off all the land which he had purchased from the Lees, except the 87 acres sold to Hall in 1811. This, as has been already remarked, is a mistake in point of fact, and has led the Court into the error which has been committed.
I think the decree should be reversed, and the bill dismissed with costs.
The other Judges concurred. Decree reversed, and bill dismissed with costs.